UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JOHN DOE,

        Plaintiff,                    Case No.
                                          Hon.

v.

BISHOP KELLEY CATHOLIC SCHOOL,
IMMACULATE CONCEPTION CATHOLIC PARISH,
ARCHBISHOP ALLEN VIGNERON, and
ARCHDIOCESE OF DETROIT,

        Defendants.

---

Megan A. Bonanni (P52079)
Michael L. Pitt (P24429)
Beth M. Rivers (P33614)
Amanda M. Ghannam (P83065)
Pitt McGehee Palmer Bonanni & Rivers, PC
117 W. Fourth St., Ste. 200
Royal Oak, MI 48067
248-398-9800
mbonanni@pittlawpc.com
mpitt@pittlawpc.com
brivers@pittlawpc.com
aghannam@pittlawpc.com
*Attorneys for Plaintiff*

---

## **COMPLAINT AND JURY DEMAND**

     Plaintiff, John Doe, by and through his attorneys, Pitt McGehee Palmer

Bonanni & Rivers, PC, brings this action against Defendants Bishop Kelley Catholic

School, Immaculate Conception Catholic Parish, Archbishop Allen Vigneron, and the Archdiocese of Detroit, and hereby alleges as follows:

## INTRODUCTION

In 2010, when Plaintiff John Doe was eight years old and in the second grade at Bishop Kelley Catholic School, he was drugged and raped in the teacher's lounge by a priest, Aloysius "Father Al" Volskis, who warned him that he would tell the devil to hurt his family if he told anyone. Volskis had been reassigned by the Archdiocese of Detroit to Bishop Kelley and its affiliated parish, Immaculate Conception, after allegations of sexual misconduct arose at his previous church. Defendants were aware of Volskis's prior assault(s) but took no action to prevent further assaults. Instead, they facilitated Volskis's access to victims such as Plaintiff by transferring Volskis and elevating his status to a position of trust and authority at a grade school, permitting him unfettered access to vulnerable young children who had been entrusted to Defendants' care. Defendants could have prevented the assault on Plaintiff, which caused him to suffer severe anxiety, depression, and psychosis, including multiple hospitalizations. Instead, they chose to conceal and deny their knowledge of Volskis's predilections. Several months after the assault on Plaintiff, another victim reported an assault by Volskis. Defendants then sheltered Volskis in the church rectory at Immaculate Conception, concealed his true whereabouts from the community, and facilitated his escape out of the country.

2

This lawsuit arises out of Defendants' liability in failing to protect John Doe from the reasonably foreseeable consequences of hiring, retaining, and failing to supervise predator "Father Al" Volskis.

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff, John Doe, is an individual residing with his parents in Lapeer County, Michigan. He is a former student of Bishop Kelley Catholic School and a former member of Immaculate Conception Catholic Parish. Plaintiff seeks to use a pseudonym in this action due to his status as a survivor of criminal sexual assault as a minor. He is 18 years old as of the date of this filing (DOB March 2002).

2.     Defendant, Bishop Kelley Catholic School ("Bishop Kelley") is a parochial school located in Lapeer County, Michigan, which was founded by and is closely affiliated with Defendant Immaculate Conception Catholic Parish. Bishop Kelley is one of approximately 100 Catholic schools under the jurisdiction of the Defendant Archdiocese of Detroit.

3.     Defendant, Immaculate Conception Catholic Parish ("Immaculate Conception" or "the Parish"), is a Catholic church located in Lapeer County, Michigan. The Parish is one of 287 Catholic churches under the jurisdiction of the Defendant Archdiocese of Detroit.

4.     Defendant, Archbishop Allen Vigneron, is the head of the Defendant Archdiocese of Detroit.

3

5.     Defendant, the Archdiocese of Detroit ("the Archdiocese"), is a nonprofit religious institution conducting business in Detroit, Michigan.

6.     The Archdiocese and Archbishop Allen Vigneron oversee the parishes and schools within its jurisdiction, including Defendants Immaculate Conception Catholic Parish and Bishop Kelley Catholic School, and are responsible for the hiring, training, supervision, and discipline of their employees and agents.

7.     This Court has federal question jurisdiction pursuant to 28 USC § 1331 and Title IX of the Education Amendments of 1972, 20 USC § 1681 *et seq*.

8.     Supplemental jurisdiction over Plaintiff's state law claims is proper pursuant to 28 USC § 1367 as they arise from the same case and controversy.

9.     Venue is proper pursuant to 28 USC § 1391 as the events giving rise to this lawsuit occurred in the Eastern District of Michigan.

10.     This lawsuit is timely brought pursuant to MCL 600.5851b as Plaintiff was a minor child at the time of the injury, reached the age of majority in March 2020, and brings this suit within one year of reaching the age of majority.

## GENERAL ALLEGATIONS

11.     Plaintiff incorporates the preceding allegations as if fully set forth herein.

12.     Defendant Bishop Kelley Catholic School was founded by, is located next door to, and is closely affiliated with Defendant Immaculate Conception Catholic Parish. The priests at the church also work at the school.

13.     Priests are assigned to Immaculate Conception and Bishop Kelley by Defendants Archbishop Allen Vigneron and Defendant Archdiocese of Detroit, which oversee approximately 387 Catholic parishes and schools in their region.

14.     Plaintiff and his family were members of Immaculate Conception until approximately 2017.

15.     Archbishop Allen Vigneron is the head of the Archdiocese of Detroit and is responsible for the assignment of priests in the parishes and schools within its jurisdiction.

16.     Archbishop Vigneron leads the Archdiocese's Department of Catholic Schools, which directs and supervises the schools within its jurisdiction and leads the implementation of the Archdiocese's "Unleashing Our Catholic Schools" program. This includes direction of the schools' curriculum, educational standards, and grading process for students, as well as the hiring, training, and overseeing of school faculty.

17.     For example, the Archdiocese, under the leadership of Archbishop Vigneron, has pledged to "develop and deploy a toolkit for schools to effectively hire faculty who have a heart for spreading the joy of discipleship in Jesus Christ";

"develop and publish highly qualified principal standards and a corresponding coaching tool, to assist pastors and other school decision makers"; and "develop and publish highly qualified teacher standards and coaching tools to assist principals and other decision makers to retain and develop joyful missionary teachers."[1]

18.    The Archdiocese and Bishop Kelley receive federal funding from sources including the United States Department of Education.

19.    Prior to his appointment at the Archdiocese of Detroit, Archbishop Vigneron served as the Archbishop to the Diocese of Oakland in California from 2003-2009, where he publicly acknowledged and apologized for the decades-long sexual abuse of over 100 girls[2] and oversaw a global settlement of 56 individual cases alleging sexual abuse by members of the Oakland clergy in 2005.[3]

20.    Despite his earlier apology for sexual abuse by priests, in 2008, Archbishop Vigneron was criticized for reinstating a priest who had been accused

---

[1]  See  https://www.detroitcatholicschools.org/department-of-catholic-schools,  last accessed January 21, 2021.

[2] See https://www.eastbaytimes.com/2005/05/11/bishop-apologizes-for-priest-misconduct/, last accessed December 17, 2020.

[3] See http://www.bishop-accountability.org/news2005_07_12/2005_08_05_Curtis_OaklandDiocese.htm, last accessed December 17, 2020.

of molesting a child, despite that priest's prior removal from active ministry after he was part of a civil lawsuit alleging child abuse.[4]

21.    Archbishop Vigneron was appointed by Pope Benedict XIV to his current position as the Archbishop of Detroit in 2009.

22.    The Archdiocese of Detroit purports to encourage its members to report clergy sexual abuse of minors directly to law enforcement. In 2002, the Archdiocese signed a voluntary agreement with prosecutors in the six counties within its jurisdiction, agreeing to report all complaints of abuse to civil authorities.[5]

23.    The Archdiocese of Detroit has published the names of over 100 clergy credibly abused of sexual abuse[6], some of whom are currently under investigation by the Michigan Attorney General.

24.    Despite the Archdiocese's purported commitment to eradicating sexual abuse, Defendants Bishop Kelley and Immaculate Conception had previously mishandled allegations of sexual abuse of minors in Lapeer.

---

[4] See http://www.bishop-accountability.org/news2008/01_02/2008_02_29_CaliforniaCatholicDaily_IHad.htm, last accessed December 17, 2020.
[5] See https://protect.aod.org/report-abuse, last accessed January 23, 2021.
[6] See https://protect.aod.org/clergy-credibly-accused-of-abuse, last accessed January 23, 2021.

25.     In approximately 2006, Plaintiff John Doe's mother reported to Father Douglas Terrian, a priest at Immaculate Conception, rumors that a teenaged altar boy had molested children at a sleepover event.

26.     Father Terrian refused to take any action in response to the report. Instead, he told Mrs. Doe that he could not reveal what she had told him because it had been disclosed during confession. Mrs. Doe then repeated the allegations, making a point to clarify that she was now doing so outside the context of religious confession, and Father Terrian still refused to take any action in response to her report.

27.     Father Terrian and Defendants oversaw the employment of Aloysius (or Aloyzas) Volskis, known to the children as "Father Al," during his tenure as a priest at Bishop Kelley and Immaculate Conception beginning in 2010.

28.     Volskis immigrated from Lithuania to the United States in the 1980s. He worked as a priest in Montreal, Canada; Los Angeles, California; and Southfield, Michigan before the Archdiocese transferred him to Bishop Kelley and Immaculate Conception.

29.     Volskis was known by Defendants to have exhibited a pattern of grooming and sexually abusing both adults and minor children.

30.     Upon information and belief, beginning in 1999, prior to his assignment at Immaculate Conception and Bishop Kelley, Volskis had been transferred between

8

multiple other parishes and schools within the Archdiocese of Detroit, including the Divine Providence Parish in Southfield, Michigan.

31.    The Archdiocese of Detroit transferred Volskis from the Divine Providence Parish in Southfield to the Immaculate Conception Parish and Bishop Kelley in Lapeer because he had been credibly accused of sexual improprieties with a parishioner in Southfield.

32.    Despite Defendants' knowledge of Volskis's predilections, they not only continued to employ Volskis, but also permitted him unfettered access to vulnerable young children, whose parents had entrusted them to Defendants' care.

33.    In addition to officiating church services and funerals at Immaculate Conception, Volskis spent a significant amount of time at Bishop Kelley, performing Mass, confession, and other services for the children, participating in activities such as coordinating student drop-offs and pick-ups, and engaging in costumed Halloween festivities at the school.

34.    Moreover, Defendants permitted Volskis to provide one-on-one counseling, confession, and/or religious instruction sessions with young children such as Plaintiff.

35.    In or around late October 2010, Plaintiff attended such a session, which he knew as "spiritual formation," with Volskis.

36.     Plaintiff had specifically requested to see Volskis because he felt at the time that "Father Al" was like a "father figure," that it would be safe, and that Volskis could answer his questions.

37.     Plaintiff was eight years old and in the second grade at Defendant Bishop Kelley Catholic School at the time.

38.     That morning, the principal removed Plaintiff from class, escorted him to the teachers' lounge, closed the door, and left him alone with Volskis.

39.     Volskis noticed that Plaintiff had a cold and offered Plaintiff two blue pills..

40.     Plaintiff, an eight-year-old child who trusted "Father Al," had no reason to think that the pills were anything other than cold medicine, and took them.

41.     After taking the pills, Plaintiff fell into a semi-sedated state of consciousness. He could not move, but was aware of his surroundings.

42.     Volskis then raped and molested Plaintiff in the teachers' lounge.

43.     Plaintiff heard Volskis moaning and uttering prayers or chants in Latin during the assault.

44.     After the rape, Plaintiff observed that his tie was undone, his shirt was unbuttoned, and his pants were around his ankles; there was blood and wetness in his underwear.

45.     Volskis warned Plaintiff not to tell anybody what had occurred or physical illness and diseases would afflict his family and he would go to hell.

46.     When Plaintiff's mother picked him up from the school that day, Plaintiff stated that he never wanted to go to a spiritual formation or counseling session again.

47.     Later that day, Plaintiff's mother found blood in her son's underwear. which she assumed was caused by digestive issues.

48.     Plaintiff's mother later asked him again if he wanted to go back to spiritual formation. Plaintiff told his mother that he would never go with "Father Al" again, but refused to elaborate.

49.     After the assault, Plaintiff, formerly a talkative and bubbly child, became withdrawn and quiet. He stopped talking to his friends, stopped doing his homework, and would refuse to attend school, requiring his parents to sit in the car with him for up to three hours before he would even agree to enter the building.

50.     Around Christmas 2010, a church employee, Sue Vaughn, asked Plaintiffs' parents if they had had any "problems" with Volskis and disclosed that Volskis had sexually abused other children at the school. Plaintiff, who was only eight years old, denied being abused at the time.

51.     In early 2011, another parishioner reported to Defendants and to the Lapeer County Police that Volskis had groomed and sexually assaulted her.

52.    Plaintiff and his parents did not see Volskis at Bishop Kelley again after approximately January or February of 2011.

53.    Father Terrian told the parishioners that Volskis "had a family emergency in Russia and had to go."

54.    However, a church employee revealed to  Plaintiff's mother that Defendants were hiding Volskis in the church rectory.

55.    Despite their knowledge of Volskis's predatory behavior, Defendants lied to the parishioners about Volskis's whereabouts and continued to permit Volskis to work at Immaculate Conception parish  until at least April of 2011.

56.    Upon information and belief, Volskis now resides in Eastern Europe where he continues to work as a priest..

57.    After Volskis's departure, Plaintiff's mental health struggles worsened, and he experienced trauma, anxiety, psychosis, and depression.

58.    Plaintiff was diagnosed with ADHD and sought mental health treatment for years.

59.    Continuing to attend Catholic school only exacerbated his trauma, as the sight of priests and other Catholic religious objects reminded him of the assault. He became deeply troubled, undergoing severe internal conflict as he wondered whether the assault made him gay, and obsessed over topics such as becoming "martyred" for the church.

60.     As Plaintiff's condition deteriorated, another church employee, who witnessed Plaintiff and his family's suffering, repeatedly asked Plaintiff's mother if "something had happened with Father Al."

61.     In approximately late 2017 or early 2018, Plaintiff  confessed to his parents that Volskis had sexually abused him. He revealed that he had never before disclosed the assault because Volskis had told him that he [Volskis] "had power with the devil" and would have Plaintiff's mother killed if he told anyone about the assault.

62.     Plaintiff and his parents reported the assault to Bishop Kelley and Immaculate Conception in approximately March 2018.

63.     Since disclosing the assault, Plaintiff's mental health condition has deteriorated significantly.

64.     Plaintiff has continued to struggle with severe anxiety, depression, psychosis, and emotional anguish.

65.     Plaintiff's mother was diagnosed with cancer after Plaintiff reported the assault and because of Volskis's threats, Plaintiff blamed himself for his mother's illness; he continues to suffer from deeply entrenched feelings of guilt and shame.

66.     Plaintiff has had to drop out of school, has expressed suicidal ideation and, at times, uncontrollable violent outbursts, and has been hospitalized multiple times.

## COUNT I
## Title IX of the Education Amendments of 1972
## 20 U.S.C. § 1681 *et seq.*

67.     Plaintiff incorporates the preceding allegations as if fully set forth herein.

68.     Title IX provides: "No person in the United States shall on the basis of sex, be … subject to discrimination under any education program or activity receiving Federal financial assistance …"

69.     Upon information and belief, Defendants are recipients of federal financial assistance for their education programs and activities and are therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. § 1681(a), *et seq*.

70.     Defendants, Bishop Kelley Catholic School, Immaculate Conception Catholic Parish, Archbishop Allen Vigneron, and the Archdiocese of Detroit, had actual and/or constructive knowledge and/or reasonably should have known of allegations of Aloysius Volskis's past sexual abuse and propensity to engage in further sexual abuse.

71.     Defendants acted with deliberate indifference to reports of Volskis's propensity to engage in sexual abuse.

72.     As a result of Defendants' deliberate indifference, Volskis had access to a one-on-one unsupervised session with Plaintiff, during which Volskis sexually assaulted Plaintiff.

73.     Volskis's assault upon Plaintiff was foreseeable to Defendants.

74.     Volskis's assault upon Plaintiff was accomplished during a one-on-one session made possible under Defendants' programs and activities.

75.     Defendants' deliberate indifference created an objectively and subjectively sexually hostile environment, depriving Plaintiff of the educational opportunities and benefits of its programs.

76.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer emotional distress, loss of value of life, public embarrassment, anger, anxiety, and depression, and damage to familial, societal, and intimate relationships.

## COUNT II
### Assault and Battery – Vicarious Liability

77.     Plaintiff incorporates the preceding allegations as if fully set forth herein.

78.     Defendants, Bishop Kelley Catholic School, Immaculate Conception Catholic Parish, Archbishop Allen Vigernon, and the Archdiocese of Detroit, had actual and/or constructive knowledge and/or reasonably should have known of

Aloysius Volskis's past sexual abuse and propensity to engage in further sexual abuse.

79.    Aloysius Volskis's act of sexually assaulting Plaintiff was offensive contact with Plaintiff's person, was not legally consensual, and amounted to unlawful assault and battery.

80.    Aloysius Volskis's assault upon Plaintiff was foreseeable to Defendants.

81.    Aloysius Volskis's assault upon Plaintiff was accomplished during a one-on-one session made possible through and within the scope of his duties with Defendants.

82.    Defendants are vicariously liable for the foreseeable sexual assault and battery perpetrated upon Plaintiff by Aloysius Volskis.

83.    As a direct and proximate result of Aloysius Volskis's unlawful acts for which Defendants are vicariously liable, Plaintiff has suffered and continues to suffer emotional distress, loss of value of life, public embarrassment, anger, anxiety, and depression, and damage to familial, societal, and intimate relationships.

## COUNT III
### Intentional Infliction of Emotional Distress – Vicarious Liability

84.    Plaintiff incorporates the preceding allegations as if fully set forth herein.

85.     Defendants, Bishop Kelley Catholic School, Immaculate Conception Catholic Parish, Archbishop Allen Vigneron, and the Archdiocese of Detroit, employed Aloysius Volskis and had actual and/or constructive knowledge and/or reasonably should have known of his past sexual abuse and propensity to engage in further sexual abuse.

86.     Aloysius Volskis's act of sexually assaulting Plaintiff was so extreme and outrageous as to constitute intentional infliction of emotional distress.

87.     Aloysius Volskis's assault upon Plaintiff was foreseeable to Defendants.

88.     Aloysius Volskis's assault upon Plaintiff was accomplished during a one-on-one session made possible through and within the scope of his duties with Defendants.

89.     Defendants are vicariously liable for the foreseeable intentional infliction of emotional distress perpetrated upon Plaintiff by Aloysius Volskis.

90.     As a direct and proximate result of Aloysius Volskis's unlawful acts for which Defendants are vicariously liable, Plaintiff has suffered and continues to suffer emotional distress, loss of hedonic value of life, public embarrassment, anger, anxiety, and depression, and damage to familial, societal, and intimate relationships.

**COUNT IV**
**Negligence in Hiring, Retention, and/or Supervision**

91.    Plaintiff incorporates the preceding allegations as if fully set forth herein.

92.    Defendants, Bishop Kelley Catholic School, Immaculate Conception Catholic Parish, Archbishop Allen Vigneron, and the Archdiocese of Detroit, had actual and/or constructive knowledge and/or reasonably should have known of Aloysius Volskis's past sexual abuse and propensity to engage in further sexual abuse both prior to hiring him and throughout his employment.

93.    Plaintiff, a minor child and a student at Bishop Kelley Catholic School, had a legally cognizable "special relationship" with Defendants, who were responsible for his care and wellbeing.

94.    Defendants thus owed a duty to Plaintiff to safeguard his wellbeing and to prevent physical harm, including sexual assault, to Plaintiff.

95.    Defendants also had a duty to Plaintiff, other students, and the general public to act in a reasonable manner to avoid hiring or retaining individuals who they knew or reasonably should have known posed a risk of harm to others.

96.    Defendants breached their duties by hiring, retaining, and failing to supervise Aloysius Volskis, allowing him unfettered access to one-on-one meetings with young children including Plaintiff, who trusted him and Defendants to provide a safe environment for their education and counseling.

97.    Aloysius Volskis's assault upon Plaintiff was reasonably foreseeable to Defendants.

98.    Aloysius Volskis's assault upon Plaintiff was accomplished during a one-on-one session made possible through and within the scope of his duties with Defendants.

99.    Defendants' hiring of, retention of, and failure to supervise Aloysius Volskis were the direct and proximate cause of the sexual assault perpetrated by Volskis upon Plaintiff.

100.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer emotional distress, loss of value of life, public embarrassment, anger, anxiety, and depression, and damage to familial, societal, and intimate relationships.

## COUNT V
## Negligent Infliction of Emotional Distress

101.   Plaintiff incorporates the preceding allegations as if fully set forth herein.

102.   Defendants, Bishop Kelley Catholic School, Immaculate Conception Catholic Parish, Archbishop Allen Vigneron, and the Archdiocese of Detroit, had actual and/or constructive knowledge and/or reasonably should have known of Aloysius Volskis's past sexual abuse and propensity to engage in further sexual abuse both prior to hiring him and throughout his employment.

103.    Plaintiff, a minor child and a student at Bishop Kelley Catholic School, had a legally cognizable "special relationship" with Defendants, who were responsible for his care and wellbeing.

104.    Defendants thus owed a duty to Plaintiff to safeguard his wellbeing and to prevent physical harm, including sexual assault, to Plaintiff.

105.    Defendants also had a duty to Plaintiff, other students, and the general public to act in a reasonable manner to avoid hiring or retaining individuals who they knew or reasonably should have known posed a risk of harm to others.

106.    Defendants breached their duties by hiring, retaining, and failing to supervise Aloysius Volskis, allowing him unfettered access to one-on-one meetings with young children including Plaintiff, who trusted him and Defendants to provide a safe environment for their education and counseling.

107.    Aloysius Volskis's assault upon Plaintiff was reasonably foreseeable to Defendants.

108.    Aloysius Volskis's assault upon Plaintiff was accomplished during a one-on-one session made possible through and within the scope of his duties with Defendants.

109.    As a result of the sexual assault, Plaintiff has suffered and continues to suffer severe emotional distress.

110.   Defendants' negligence was a substantial factor in causing Plaintiff's emotional distress.

111.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer emotional distress, loss of value of life, public embarrassment, anger, anxiety, and depression, and damage to familial, societal, and intimate relationships.

## COUNT VI
### Violation of the Elliott-Larsen Civil Rights Act
### MCL 37.2301 *et seq.*

112.   Plaintiff incorporates the preceding allegations as if fully set forth herein.

113.   Defendant Bishop Kelley, as a private school, is a place of public accommodation as defined by the Elliott-Larsen Civil Rights Act, MCL 37.2301(a), i.e. an educational institution whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public.

114.   Defendants owed a heightened duty of care to Plaintiff, a child whose parents had entrusted him into Defendants' care.

115.   While Plaintiff was a student at Bishop Kelley, Defendants stood in a special relationship with Plaintiff *in loco parentis* and were legally responsible for his school environment.

116.    Defendants, Bishop Kelley Catholic School, Immaculate Conception Catholic Parish, Archbishop Allen Vigneron, and the Archdiocese of Detroit, had actual and/or constructive knowledge and/or reasonably should have known of Aloysius Volskis's past sexual abuse and propensity to engage in further sexual abuse.

117.    While Plaintiff was a student at Bishop Kelley, Aloysius Volskis subjected Plaintiff to unwanted and unwelcome sexual conduct.

118.    Aloysius Volskis's assault upon Plaintiff was reasonably foreseeable to Defendants.

119.    Aloysius Volskis's assault upon Plaintiff was accomplished during a one-on-one session made possible through and within the scope of his duties with Defendants.

120.    Defendants are thus liable for Aloysius Volskis's conduct towards Plaintiff.

121.    Volskis's conduct, for which Defendants are liable, created a sexually hostile environment, depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations offered by Defendants.

122.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer emotional distress, loss of value of life, public

embarrassment, anger, anxiety, and depression, and damage to familial, societal, and intimate relationships.

**COUNT VII**
**Violation of the Elliott-Larsen Civil Rights Act**
**MCL 37.2701(b)**
**(Aiding and Abetting)**

123.    Plaintiff incorporates the preceding allegations as if fully set forth herein.

124.    Defendant Bishop Kelley, as a private school, is a place of public accommodation as defined by the Elliott-Larsen Civil Rights Act, MCL 37.2301(a), i.e. an educational institution whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public.

125.    M.C.L. § 37.2701(b) prohibits two or more persons from conspiring to "[a]id, abet, incite, compel, or coerce a person to engage in a violation" of the act, including discriminating against an individual utilizing services provided by a place of public accommodation.

126.    M.C.L. § 37.2701(b) prohibits an individual from acting to "[a]id, abet, incite, compel, or coerce a person to engage in a violation" of the act, including discriminating against an individual utilizing services provided by a place of public accommodation.

127.   Defendants, Bishop Kelley Catholic School, Immaculate Conception Catholic Parish, Archbishop Allen Vigneron, and the Archdiocese of Detroit, had actual and/or constructive knowledge and/or reasonably should have known of Aloysius Volskis's past sexual abuse and propensity to engage in further sexual abuse.

128.   While Plaintiff was a student at Bishop Kelley, Aloysius Volskis subjected Plaintiff to unwanted and unwelcome sexual conduct.

129.   Aloysius Volskis's assault upon Plaintiff was reasonably foreseeable to Defendants.

130.   Aloysius Volskis's assault upon Plaintiff was accomplished during a one-on-one session made possible through and within the scope of his duties with Defendants.

131.   Volskis's conduct created a sexually hostile environment, depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations offered by Defendants.

132.   Defendants conspired to aid, abet, abet, incite, compel and/or coerce Plaintiff to submit to Volskis's act of unwanted and unwelcome sexual conduct, including by transferring Volskis, a known predator, to Bishop Kelley/Immaculate Conception; placing Volskis in a position of trust and authority; and providing Volskis with unsupervised and unfettered access to young children.

133.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer emotional distress, loss of value of life, public embarrassment, anger, anxiety, and depression, and damage to familial, societal, and intimate relationships.

## **<u>RELIEF REQUESTED</u>**

WHEREFORE, Plaintiff prays for a judgment against Defendants in whatever amount he may be found to be entitled, along with interest, costs, and attorneys' fees, and any other relief as this Court deems necessary and appropriate.

Respectfully submitted,

Pitt McGehee Palmer Bonanni & Rivers, PC

By: */s/ Megan A. Bonanni*
Megan A. Bonanni (P52079)
Michael L. Pitt (P24429)
Beth M. Rivers (P33614)
Amanda M. Ghannam (P83065)
117 W. Fourth St., Ste. 200
Royal Oak, MI 48067
248-398-9800
mbonanni@pittlawpc.com
mpitt@pittlawpc.com
brivers@pittlawpc.com
aghannam@pittlawpc.com
*Attorneys for Plaintiff*

Dated: March 10, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JOHN DOE,

        Plaintiff,                        Case No.
                                              Hon.

v.

BISHOP KELLEY CATHOLIC SCHOOL,
IMMACULATE CONCEPTION CATHOLIC PARISH,
ARCHBISHOP ALLEN VIGNERON, and
ARCHDIOCESE OF DETROIT,

        Defendants.

---

Megan A. Bonanni (P52079)
Michael L. Pitt (P24429)
Beth M. Rivers (P33614)
Amanda M. Ghannam (P83065)
Pitt McGehee Palmer Bonanni & Rivers, PC
117 W. Fourth St., Ste. 200
Royal Oak, MI 48067
248-398-9800
mbonanni@pittlawpc.com
mpitt@pittlawpc.com
brivers@pittlawpc.com
aghannam@pittlawpc.com
*Attorneys for Plaintiff*

---

## JURY DEMAND

Plaintiff, John Doe, by and through his attorneys, Pitt McGehee Palmer Bonanni & Rivers, PC, hereby demands a trial by jury in the above-captioned matter on all issues so triable.

26

Respectfully submitted,

Pitt McGehee Palmer Bonanni & Rivers, PC

By: */s/ Megan A. Bonanni*
Megan A. Bonanni (P52079)
Michael L. Pitt (P24429)
Beth M. Rivers (P33614)
Amanda M. Ghannam (P83065)
117 W. Fourth St., Ste. 200
Royal Oak, MI 48067
248-398-9800
mbonanni@pittlawpc.com
mpitt@pittlawpc.com
brivers@pittlawpc.com
aghannam@pittlawpc.com
*Attorneys for Plaintiff*

Dated: March 10, 2021